Filed 9/29/20  P. v. Brown CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>v.<br><br>ISIAH L. BROWN,<br>        Defendant and Appellant. | A152905<br><br>(Solano County Super.<br> Ct. No. VCR228826) |

Defendant Isiah L. Brown was convicted of corporal injury and second-degree robbery of a woman with whom he has a child.  He argues the trial court prejudicially erred in admitting certain propensity evidence and instructing the jury on flight as evidence of guilt, and that he received ineffective assistance of counsel regarding his right to testify.  We conclude Brown's arguments lack merit and affirm.

## BACKGROUND

In a January 2017 information, the Solano County District Attorney alleged that Brown willfully inflicted a corporal injury on Chandra Lastrappe, the mother of his child (Pen. Code, § 273.5, subd. (a)),[1] and robbed her, committing second-degree robbery.  (§ 211).  A jury trial followed.

---

[1]  Statutory references are to the Penal Code unless otherwise stated.

1

# I.

## *Chandra Lastrappe's Testimony*

Lastrappe testified that she had an altercation with Brown on January 12, 2016. As of that date, the two had not lived together since October 2015 but still had a "physical relationship." They had a daughter who was about eight years old at the time of the altercation.

The altercation took place outside the house of Brown's mother, Venus Hardy. Lastrappe had dropped off her daughter at Hardy's house earlier that day. When she drove up to the house between 5:30 p.m. and 6:00 p.m. to pick up her daughter, Brown was standing by the carport. Lastrappe circled the block because she "knew something was going to occur" and called Hardy to ask her to walk her daughter outside. As Hardy and the child came out, Brown told the child to go back inside, opened Lastrappe's passenger side door and started hitting her with a closed fist, telling her he was upset because she had "changed the locks on the house and he couldn't get in to get [her] lease." Hardy sat down in the passenger seat of Lastrappe's car, but Brown continued to hit Lastrappe. Brown stopped hitting her momentarily and then hit her again as he tried to grab a set of keys on a medium-sized key ring that was looped around Lastrappe's ring finger. They wrestled over the key ring for a few seconds and Brown ultimately took it. As a result of the struggle, Lastrappe's ring finger became numb and swollen, and started changing colors.

After taking her keys, Brown went to his car, parked about seven feet away. Lastrappe got out of her car and tried to pepper spray or mace Brown, but he was able to get in his vehicle and drive away.

Lastrappe called 911 and spoke to a dispatcher. In a recording played for the jury (which we quote from using a transcript contained in the record),

the dispatcher asked her if her finger was broken and Lastrappe responded, "I think it is, it hurts so bad. I think he broke my finger," and "it is turning blue." Lastrappe also stated, "[t]his is not the first time we have had an altercation. He busted out my car window at this same place in July." Lastrappe said she needed an officer to go to her home "cause he's trying to go and break into my house," where she had changed the locks. Later, Lastrappe had her car towed because she did not have a key to move it.

Lastrappe also testified that she went to an emergency room later that evening, where a doctor examined her and gave her a splint for her ring finger. She used the splint for about a week and a half and took ibuprofen for pain.

Lastrappe further testified that she and Brown began talking again soon after the altercation. Brown returned a key a day to Lastrappe after she "showed him that [they were] okay and still in [a] good space." Brown had taken her keys at least three other times and had hit her before to get her keys. Also, there had been other incidents in which Brown attacked her or acted violently in her presence, which we will soon discuss further.

## II.

### *Other Evidence*

The prosecution also called Brown's mother, Hardy, as a witness. Hardy could not remember much about the incident, said she stayed in her house and did not see Brown hit Lastrappe, and remembered coming outside eventually and seeing Lastrappe "chasing [Brown's] car down the street with some pepper spray." Hardy heard her voice on the 911 call telling Lastrappe to come in the house and testified she did so "because [Lastrappe] was being confrontational," but Hardy did not remember telling Lastrappe that she

3

should "[t]ell the cops to go to your house since he has the keys." She testified that Lastrappe had caused problems at her house before.

An officer with the Vallejo Police Department testified that he arrived at Hardy's residence about 10 minutes after receiving a dispatch at 6:03 p.m. on the day of the incident. He spoke to Lastrappe, who alleged Brown had struck her multiple times with a closed fist, stolen her keys and caused an injury to her finger. She also told him she had sprayed mace or pepper spray, but he understood this had happened while Brown was still punching her and not while she chased his car. The officer looked for, but did not see, any abrasions, bruising or redness on Lastrappe's face, neck or hands or any other injuries. Later, he saw Lastrappe's vehicle being towed away.

## III.

### *Verdict, Sentencing and Appeal*

The jury found Brown guilty of both counts. About two weeks later, just before convening the sentencing hearing, the court conducted a confidential *Marsden*[2] hearing regarding Brown's assertion that his trial counsel did not allow him to testify and denied Brown relief.

The court suspended imposition of sentence and placed Brown on formal probation for three years with service of 120 days in county jail or an alternative sentence program. Probation conditions included mandatory drug testing, submission to searches, and 52 weeks of "Batterer's Treatment" therapy.

Brown filed a timely notice of appeal.

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

4

# DISCUSSION

## I.

### *The Court Did Not Err in Admitting Evidence of a July 2015 Incident.*

First, Brown argues the trial court abused its discretion when it admitted evidence of a prior incident between himself and Lastrappe as propensity evidence under Evidence Code section 1109, which authorizes the admission of propensity evidence of domestic violence.[3]  Brown contends that incident involved only an act of vandalism, which he claims does not fall under the definition of "abuse" or "domestic violence" in Evidence Code section 1109.  We disagree.

#### A. Relevant Proceedings Below

Prior to trial, defense counsel objected to the admission of evidence of four prior incidents that the prosecution sought to have admitted as propensity evidence of uncharged domestic violence under Evidence Code section 1109.  On appeal, Brown challenges the admission of the evidence of only one of these incidents, which occurred on July 13, 2015 (July 2015 incident).  His counsel repeated his objection to the admission of this evidence during the hearing on jury instructions, stating that he didn't "think vandalism of a vehicle counts as domestic violence."  The trial court admitted

---

[3]  Evidence Code section 1109 states that, subject to exceptions not applicable here, "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."  (Evid. Code, § 1109, subd. (a)(1).)  " 'Domestic violence' has the meaning set forth in Section 13700 of the Penal Code.  Subject to a hearing conducted pursuant to Section 352, which shall include consideration of any corroboration and remoteness in time, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense."  (Evid. Code, § 1109, subd. (d)(3).)

the evidence of the July 2015 incident as propensity evidence of uncharged domestic violence under Evidence Code section 1109 and instructed the jury regarding this evidence.

At trial, Lastrappe testified that on July 12, 2015, the day before the July 2015 incident, she went with Brown to a casino. Later Brown demanded half of the money she won there. Lastrappe refused to give any of the money to him and they argued. As a result, Brown slept elsewhere that night while Lastrappe stayed at Hardy's house.

The next day, Brown and Lastrappe argued again at Hardy's house and Brown left. Sometime later, as Lastrappe and her daughter exited Hardy's house, Brown returned and parked his car in an alley. He picked up a cement brick, walked over to Lastrappe's car and smashed it against Lastrappe's rear passenger door a couple of times, then threw the brick through the car's rear window and ran away. He also took Lastrappe's keys, though Lastrappe could not recall if he took them before or after hitting her vehicle. A police officer testified to meeting Lastrappe the next day at a hotel and taking her to her car, which was parked at Hardy's house, where he observed damage to its rear passenger door and rear window.

Lastrappe also detailed the remaining past incidents in her testimony. In 2009, following an argument regarding Brown's flirtatious behavior with another woman, Brown slapped Lastrappe while she was driving, causing her to "swerve[] the car." During a 2015 birthday party at Hardy's house, Brown repeatedly called Lastrappe a "bitch," threw a light bulb at her head, which missed, and slammed her into the ground, causing an injury to her left elbow that caused pain for almost a year. In another 2015 incident, Brown argued with Lastrappe, "began putting his hands" on her and got on top of her as she

6

lay on the floor.  When another person tried to intervene, Brown put that person in a headlock.

**B. Standard of Review**

" 'In determining the admissibility of evidence, the trial court has broad discretion. . . .  A trial court's ruling on admissibility implies whatever finding of fact is prerequisite thereto . . . .'  [Citation.]  'We review the trial court's conclusions regarding foundational facts for substantial evidence.  [Citation.]  We review the trial court's ultimate ruling for an abuse of discretion [citations], reversing only if " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Jackson* (2016) 1 Cal.5th 269, 320–321.)  "The term 'substantial evidence' means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)

**C. Analysis**

Evidence Code section 1109, subdivision (a)(1) allows the admission of acts of "domestic violence" in a prosecution for an offense involving domestic violence.  Evidence Code section 1109, subdivision (d)(3) states, "(3) 'Domestic violence' has the meaning set forth in Section 13700 of the Penal Code. Subject to a hearing conducted pursuant to Section 352, which shall include consideration of any corroboration and remoteness in time, 'domestic violence' has the further meaning as set forth in Section 6211 of the Family Code, if the act occurred no more than five years before the charged offense." Evidence Code section 1109 defines "domestic violence" in two ways.  First, by referencing section 13700, it defines "domestic violence"  to mean "abuse committed against an adult or a minor who is a . . . former cohabitant, or

7

person with whom the suspect has had a child or is having or has had a dating or engagement relationship" and defines "abuse" as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself . . . or another." (§ 13700, subds. (a), (b).) Second, "if the act occurred no more than five years before the charged offense," and subject to a hearing under section 352, the definition of "domestic violence" is broader and "has the further meaning as set forth in Section 6211 of the Family Code." (Evid. Code, § 1109, subd. (d)(3).) Section 6211 defines "domestic violence" to include a broader category of victims against whom abusive acts may be considered domestic violence. (See Fam. Code, § 6211, subds. (a)–(e).)

The parties focus on whether the evidence of the July 2015 incident was admissible under the broader Family Code definition of "domestic violence" referred to in Evidence Code section 1109, subdivision (d)(3). Like section 13700, Family Code section 6211 defines "domestic violence" as "abuse." Family Code section 6203, in turn, defines "abuse" for purposes of the Domestic Violence Prevention Act (DVPA), stating that it is "not limited to the actual infliction of physical injury or assault," and defines it to include a broader range of conduct than that contained in section 13700. (Fam. Code, § 6203.) Abuse under the DVPA includes conduct that may be enjoined under Family Code section 6320, which covers "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, credibly impersonating . . . , falsely personating . . . , harassing, telephoning, . . . destroying personal property, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members." (*Id*., § 6320, subd. (a).)

8

Brown argues the court should not have admitted evidence of the July 2015 incident because his alleged acts—smashing Lastrappe's passenger door with a cement brick, throwing the brick through her rear window and taking her keys—do not meet the definition of "domestic violence" set forth in section 13700. His "vandalism," he contends, did not "intentionally or recklessly caus[e] or attempt[] to cause bodily injury," or "plac[e] another person in reasonable apprehension of imminent serious bodily injury." As to Evidence Code section 1109's reference to Family Code section 6211, Brown contends this does not expand the categories of conduct that amount to abuse but instead expands only the categories of people against whom domestic violence may be committed. Recognizing that *People v. Ogle* (2010) 185 Cal.App.4th 1138 (*Ogle*) held otherwise, Brown criticizes that decision as based on "flawed and unnecessary statutory-construction analysis" and contends it conflicts with *People v. Zavala* (2005) 130 Cal.App.4th 758.

In *Ogle*, our colleagues in the Second District concluded Evidence Code section 1109 adopted the broader definition of "abuse" that governs section 6211 where the conduct occurred within five years of the charged offense. (*Ogle, supra*, 185 Cal.App.4th at pp. 1144–1145.) Here, the alleged abuse took place in 2015, well within the five-year window. Like Brown, the defendant in *Ogle* argued "that the Family Code reference in [Evidence Code] section 1109's definition of domestic violence was intended only to bring abuse of children of domestic partners within the statute and that it was not really intended to incorporate all forms of abuse that fall within the broader Family Code definition." (*Id*. at p. 1144.) The court rejected the argument, concluding that the statute incorporated the definition of "abuse" contained in section 6203 of the Family Code. (*Ogle*, at pp. 1144–1145.) "Family Code section 6211 defines domestic violence to require abuse and Family Code

9

section 6203 defines 'abuse' to include 'engag[ing] in any behavior that has been or could be enjoined pursuant to Section 6320.' Section 6320 authorizes the court to enjoin a party from 'stalking, threatening, . . . harassing, [and] telephoning,' the other party. Thus, stalking a former spouse is domestic violence for purposes of [Evidence Code] section 1109 as defined by Family Code section 6211." (*Id.* at p. 1144.) We agree with *Ogle*'s interpretation, which was adopted by the Third District in *People v. Kovacich* (2011) 201 Cal.App.4th 863, 893–896 (defendant's act of kicking family dog in front of spouse and children constituted domestic violence under Family Code section 6211 and admissible under Evidence Code section 1109). Defendant cites no decision by any other court criticizing or rejected the interpretation; nor has our independent research revealed any.[4] Although neither party discusses it, our own review of the legislative history provides further support for the *Ogle-Kovacich* interpretation.[5]

---

[4] Brown cites *People v. Zavala, supra,* 130 Cal.App.4th 758 and contends *Ogle* is inconsistent with that decision. It is not. In *Zavala,* the court addressed whether stalking is "domestic violence (as defined by section 13700)" and does not mention or address Family Code section 6211, presumably because the trial took place before the amendment to Evidence Code section 1109 to add the references to section 6211 took effect.

[5] Evidence Code section 1109 was adopted in 1996, and originally defined "domestic violence" to have only "the meaning set forth in Section 13700 of the Penal Code." (Stats. 1996, ch. 261, § 2.) The addition of a reference to Family Code section 6211 came in 2004. (Stats. 2004, ch. 116, § 1.) In an analysis of the bill by the Assembly Judiciary Committee, the Summary states, "Expands the definition of domestic violence for purposes of a statutory exception to the evidentiary rule against admission of evidence of prior acts to show conduct on a specific occasion." (Assem. Com. on Judiciary, Cal. Bill Analysis, Assem. Bill No. 141 (2003–2004 Reg. Sess.) as amended June 9, 2004.) The Existing Law section describes the definitions of "domestic violence" and "abuse" in Penal Code section 13700 and Family Code sections 6211 and 6203, describing two differences between them, the first concerning who can be a victim of domestic violence and the second

10

In short, we conclude the trial court acted well within its discretion in concluding that the evidence of the July 2015 incident qualifies as domestic violence under Evidence Code section 1109. Lastrappe testified that after Brown had argued with her at his mother's house he left, but then returned as she came outside with her daughter in order to leave in her vehicle. In her presence, he picked up a cement brick, went over to her car, smashed the brick against her rear passenger door and then threw the brick through the car's rear window. At some point along the way, he also took her keys. All of the evidence indicates that Brown engaged in destruction of Lastrappe's property because he was angry at her. His acts at the very least constituted harassment, destruction of property, and disturbing Lastrappe's peace. (See *N.T. v. H.T.* (2019) 34 Cal.App.5th 595, 602–603 ["Disturbing the peace" under DVPA encompasses " 'conduct that destroys the mental or emotional calm of the [victim]' "].) This conduct falls well within the Family Code definitions of abuse and domestic violence and was therefore admissible under Evidence Code section 1109.

---

concerning what constitutes "abuse." Regarding the latter, it sets forth the Penal Code and then the Family Code definitions of abuse, describing the latter as "intentionally or recklessly to cause or attempt to cause bodily injury, sexual assault, to place a person in reasonable apprehension of imminent serious bodily injury to that person or to another, *or to engage in behavior that has been or could be enjoined pursuant to Family Code Section 6320 (orders enjoining assault and harassment). (Family Code Section 6203.)*" (Italics added.) The Comments section states that the bill will add to Evidence Code section 1109 "a reference to the Family Code definition of domestic violence contained in Family Code Section 6211 although limited to acts within five years" and that "[*t*]*his definition is broader than that contained in the Penal Code*, including abuse against children in the household as well as against intimate partners, *and using a somewhat broader definition of abuse*." (Italics added.)

11

We also disagree with Brown's argument that the evidence of the July 2015 incident was not admissible under the narrower definition of domestic violence referred to in Evidence Code section 1109. That definition, found in section 13700, includes abuse that intentionally or recklessly places another person "in reasonable apprehension of imminent serious bodily injury to himself . . . or another." (§ 13700, subds. (a), (b).) The court was well within its discretion to conclude that Brown's smashing of Lastrappe's car with a cement brick in Lastrappe's presence was intended to place her in reasonable apprehension of imminent serious bodily injury.[6] This is a separate and independent reason why the court's admission of the evidence was not in error.

## II.

### *The Trial Court Did Not Err in Instructing the Jury on Flight.*

Second, Brown argues the trial court improperly instructed the jury on flight because the evidence indicates he left the scene of the altercation to retrieve Lastrappe's lease from her house rather than to avoid capture by police. The People argue the instruction is factually supported and, even assuming the court erred by instructing the jury on flight, Brown fails to show that the instruction was prejudicial. We agree with the People.

---

[6] In light of our conclusions, we do not address the parties' debate over whether any error was prejudicial. Also, in his appellate claim Brown does not contest that the trial court conducted a sufficient hearing under Evidence Code section 1109, subdivision (d)(3) regarding his Evidence Code section 352 concerns. Therefore, we assume without deciding that the court met the requirement under that subdivision that it apply the definition of domestic violence contained in Family Code section 6211 "[s]ubject to a hearing conducted pursuant to Section 352."

12

## A. Relevant Proceedings Below

The prosecution requested the trial court include a jury instruction on flight. Defense counsel objected because the evidence, such as Lastrappe's testimony, indicated "clearly" that Brown "was going over to their apartment," not that he fled the scene, "flight is inapplicable, and it's prejudicial." The trial court responded, "There's some evidence, you certainly have arguments either way. There's evidence he left the description of the manner in which he leaves [*sic*] lends itself to one description. So, I'm going to give the flight instruction," which it later gave to the jury as follows: "[I]f the defendant fled immediately after this crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it's up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

## B. Analysis

Penal Code section 1127c[7] requires that whenever the prosecution relies on evidence of a defendant's flight to show guilt, the court must instruct the jury that, while flight by itself is not sufficient to establish guilt, it is a fact which, if proved, the jury may consider. (*People v. Visciotti* (1992) 2 Cal.4th 1, 60.) " 'An instruction on flight is properly given if the jury could reasonably infer that the defendant's flight reflected consciousness of guilt, and flight requires neither the physical act of running nor the reaching of a

---

[7] Section 1127c provides: "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows: [¶] The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

13

far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested.' " (*Ibid*.) We review a trial court's giving of a flight instruction to a jury for substantial evidence. (See *People v. Boyette* (2002) 29 Cal.4th 381, 438–439.)

Brown argues that there is no evidence showing that he fled the scene. Rather, Brown contends, the evidence shows merely that Lastrappe used pepper spray to prevent him from going to her residence and using the keys to enter her home, giving him a non-criminal reason for leaving the scene. He contends that at most his departure simply fulfilled the asportation requirement of robbery. He also argues that the claim-of-right jury instruction that the court gave[8] underscores that the evidence indicated he left the scene for a non-criminal reason. Therefore, the court erred in giving the flight instruction.

Brown principally relies on *People v. Crandell* (1988) 46 Cal.3d 833 in support of his claim. In *Crandell*, our Supreme Court found the flight instruction should not have been given, where, after murdering two occupants of a house, the defendant left with another occupant "to accomplish specific tasks," rather than to avoid being observed or arrested. (*Id.* at p. 869.) The defendant was eventually arrested a block away from the house

---

[8] The court instructed the jury regarding claim of right: "[I]f the defendant obtained property under a claim of right, he did not have the intent required for the crime of robbery. The defendant obtained property under a claim of right if he believed in good faith that he had the right to the specific property and he openly took it. In deciding whether the defendant believes that he had a right to a property and whether he that he [*sic*] would believe in good faith, consider all the facts known to him at the time he obtained the property, along with all the other evidence in this case. [¶] The defendant may hold a belief in good faith even if the belief is mistaken or unreasonable. But if the defendant was aware of facts that made the belief completely unreasonable, you may conclude the belief was not held in good faith."

when he returned to dispose of the bodies. (*Id.* at pp. 869–870.) The court explained that "his leaving was not flight in the absence of any evidence from which a jury could reasonably infer that he left to avoid being observed or arrested." (*Id.* at p. 869.)

Brown's arguments are unpersuasive. As the trial court implied in deciding to give the flight instruction, although defense counsel may have been able to cite some evidence to argue he had reason for leaving the scene other than to avoid being observed or arrested, there was also evidence to support a finding he left to evade detection or arrest. " '[A] flight instruction is proper whenever evidence of the circumstances of defendant's departure from the crime scene or his usual environs, . . . logically permits an inference that his movement was motivated by guilty knowledge.' " (*People v. Lucas* (1995) 12 Cal.4th 415, 470.) Such an inference exists here.

Lastrappe testified that in the course of his assault on her, Brown complained about her changing the locks on her home, thereby preventing him from entering and obtaining her lease. This evidence could support an inference that, having taken her keys, he left to go to her home. The inference is a weak one, however.[9] Lastrappe also testified that Brown no longer lived with her and that he had seized her keys on prior occasions, supporting an inference that he took her keys as a way of controlling her by preventing her from entering her house. Further, there is evidence—which Brown does not address—that supports an inference of flight. Specifically,

---

[9] Brown also points to evidence that Lastrappe had tried to pepper spray him, providing another reason for him to leave. The evidence, beyond Lastrappe's own testimony that she tried to pepper spray or mace him as he went to his car, was in conflict as to whether she tried to pepper spray him before or after he got in his car. Hardy testified she saw Lastrappe chasing Brown's car with pepper spray, whereas the responding officer testified Lastrappe had told him she tried to spray him as he was hitting her.

after Brown struck Lastrappe multiple times with a closed fist, injured her finger and seized her keys, he immediately got into his car and left the scene. The jury could reasonably infer that Brown, knowing he had just assaulted Lastrappe, fled because he knew Lastrappe might call police, as she in fact did immediately after he left. In view of this evidence, the trial court did not err in giving the flight instruction to the jury.

Even assuming for the sake of argument that the court committed instructional error, such an error would not have been not prejudicial to Brown. We review instructional error in a noncapital case for prejudice under the "reasonable probability" standard established in *People v. Watson* (1956)] 46 Cal.2d 818, 836. (*People v. Beltran* (2013) 56 Cal.4th 935, 955 [" ' "[M]isdirection of the jury, including incorrect . . . instructions that do not amount to federal constitutional error are reviewed under the harmless error standard articulated" in *Watson*' "].) A reasonable probability "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.)

Brown argues the error was prejudicial because the jury could have found Lastrappe's account was not credible in light of the evidence of her acrimonious relationship with Brown and the responding officer's testimony that he did not observe that Lastrappe was physically injured when he interviewed her at the scene. We disagree. It is very likely that the jury, without being instructed on flight, still would have found Brown guilty of the charged offenses based on the evidence presented. This includes not only the testimony of Lastrappe that we have already recounted, but also the responding officer's testimony about what Lastrappe told him at the scene and the recording of the 911 call Lastrappe made immediately after Brown

16

left, all of which supported her account of his assault and seizing of her keys. Further, there is the propensity evidence that Brown had committed four past, uncharged acts of domestic violence against Lastrappe. In light of the entire record, there is not a reasonable probability that Brown would have obtained a better result without the flight instruction.

## III.

### *Brown Has Waived His Ineffective Assistance of Counsel Claim.*

Finally, Brown argues that we must reverse the judgment because he received ineffective assistance of counsel, because his trial counsel ignored his wish to testify and did not call him to the stand. The People argue that Brown waived this claim by not expressing to the court his desire to testify before the jury delivered their verdicts and that in any event his claim lacks merit. We agree that Brown has waived this claim and do not address its merits.

### A. Relevant Proceedings Below

On September 12, 2017, defense counsel informed the court it was possible that Brown would testify the next day. The following morning, September 13, trial counsel announced that the defense rested without calling Brown to the stand. After this announcement, the parties and the court discussed jury instructions, the court instructed the jury, including regarding Brown's right not to testify, the parties began their closing arguments, a break for lunch was taken, the parties completed their closing arguments and the jury began deliberations, all on September 13. On September 14, the parties, with Brown present, and the court discussed a question from the jury. Then, late in the afternoon of September 14, the jury returned its verdicts. The trial court excused the jury and set the case for sentencing on October 27, 2017. At that point, Brown attempted to ask the

17

trial court a question, but the trial court directed him to speak to his counsel instead.

On October 27, 2017, prior to the sentencing hearing, the trial court conducted a confidential post-trial hearing on a *Marsden* motion, the contents of which have been filed under seal with this court. At the conclusion of the hearing, the court denied the motion.

**B. Legal Standards**

An accused has a fundamental constitutional right to testify in his own defense. (*Rock v. Arkansas* (1987) 483 U.S. 44, 51–52; *People v. Johnson* (1998) 62 Cal.App.4th 608, 617–618.) "[T]he right to testify 'is one of the rights that "are essential to due process of law in a fair adversary process," ' " which is "protected by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution." (*Johnson*, at p. 617, quoting *Rock*, at p. 51.) "A criminal defendant has the right to take the stand even over the objections of his trial counsel." (*Johnson*, at p. 618.)

A defendant's denial of a right to testify claim is reviewable on appeal as a claim of ineffective assistance of counsel. (*People v. Bradford* (1997) 14 Cal.4th 1005, 1053.) " ' "To establish ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." ' " (*People v. Rices* (2017) 4 Cal.5th 49, 80; *Strickland v. Washington* (1984) 466 U.S. 668, 694.)

Generally on direct appeal, " ' "[i]f the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless

there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) However, defendant asserts, based on his construction of *Rock* and another United States Supreme Court case, in which the defendant raised a violation of the right to a public trial in an ineffective-assistance-of-counsel claim, *Weaver v. Massachusetts* (2017) ___ U.S. ___, 137 S.Ct. 1899, that counsel's failure to call to the stand a defendant who wants to testify is by itself a basis to find ineffective assistance of counsel and that in any event his counsel's conduct here was prejudicial. We need not decide what is necessary to establish prejudice here because, as we will discuss, we conclude defendant waived his right to testify by his failure to raise it before the jury reached its verdict and, therefore, he has no basis for his ineffective assistance of counsel claim.

### C. Brown Waived His Right to Testify.

A defendant's right to testify, or refusal to do so, arises from the Fifth Amendment to the United States Constitution and article I, section 15 of the California Constitution. According to our Supreme Court, "[a]lthough tactical decisions at trial are generally counsel's responsibility," a defendant's "decision whether to testify [is] a question of fundamental importance . . . made by the defendant after consultation with counsel." (*People v. Carter* (2005) 36 Cal.4th 1114, 1198.) However, the court has "rejected the position that a trial court must attain an affirmative waiver on the record whenever a defendant fails to testify at trial." (*Ibid*.) " 'When the record fails to disclose a timely and adequate demand to testify, "a defendant may not await the outcome of the trial and then seek reversal based on his claim that despite expressing to counsel his desire to testify, he was deprived of that opportunity." ' " (*People v. Bradford*, *supra*, 14 Cal.4th at p. 1053, accord,

19

*People v Alcala* (1992) 4 Cal.4th 742, 805–806, abrogated on other grounds by statute as stated in *People v. Falsetta* (1999) 21 Cal.4th 903, 911.)[10]

Brown argues that "[t]here is no indication in the record that appellant understood he could bring disagreements with his counsel to the court's attention, or would have felt empowered to do so over the din of the extraordinarily-acrimonious proceedings, before the sentencing hearing." This is unpersuasive. However contentious some of counsels' interactions may have been during the trial, the discussions before the court on September 13 and 14, with one relatively brief exception during the discussion of jury instructions, were not particularly contentious. Brown had multiple opportunities to express his concerns about his counsel and testifying over the better part of two days before the jury returned its verdicts On September 13, he could have raised them when his trial counsel announced that the defense rested, when the court and counsel discussed jury instructions, when the court announced it was going to instruct the jury, when counsel gave closing arguments and when the jury was sent out of the courtroom to begin its deliberations. He could have raised it to the court the next morning when the jury continued its deliberations when the court and the parties discussed a jury question or at any time until the late afternoon, when the jury returned its verdicts. Yet it was not until *after* the jury returned its guilty verdicts that he sought to ask the court something, and even this was not necessarily about his purported desire to testify given that it was not until two weeks later that he addressed the court about his

---

[10] In his reply brief and at oral argument, Brown cited *People v. Eddy* (2019) 33 Cal.App.5th 472 to argue that he was not necessarily required to raise his concern prior to the jury reaching a verdict. That case is inapposite for multiple reasons, including because it involved a defendant's right to maintain his innocence, not any desire to testify, and did not address our Supreme Court's holdings in *Bradford* and *Alcala*.

20

concerns, just prior to the sentencing hearing.  Brown's failure to raise his desire to testify before the jury returned its verdicts constitutes a waiver of his right and, therefore, his ineffective assistance claim fails.

## DISPOSITION

The judgment is affirmed.

 

_____
STEWART, J.

We concur.


_____
KLINE, P.J.


_____
RICHMAN, J.